IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 24-cr-00034-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CAMPBELL PHILLIP SLAYDEN,

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America, by and through Matthew T. Kirsch, Acting United States Attorney for the District of Colorado, and Albert Buchman, Assistant United States Attorney, and the defendant, Campbell Phillip Slayden, personally and by counsel, Peter Hedeen, hereby submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1 and Federal Rule of Criminal Procedure 11(c)(1)(c). This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I.   AGREEMENT

#### A.   *The defendant's plea of guilty:*

The defendant agrees to:

(1)   plead guilty to Counts One and Two of the Information [ECF 1] charging Conspiracy to Defraud the United States, 18 U.S.C. § 371, and Possession of an Unregistered Firearm, 26 U.S.C. § 5861(d);

(2)   sign a Consent to Forfeiture or Destruction of Property and Waiver of Notice form relating to property that was seized from the defendant for evidentiary purposes, and which is in the custody or control of the Bureau of Alcohol,



Exhibit 1

Tobacco, Firearms and Explosives. The defendant further agrees that the property identified on the Consent to Forfeiture or Destruction of Property and Waiver of Notice form was lawfully seized and that it is evidence, contraband, or fruits of the crimes to which the defendant is pleading guilty. The defendant agrees to sign a second Consent to Forfeiture or Destruction of Property and Waiver of Notice form relating to property that the defendant has agreed to voluntarily turn over to law enforcement officers, specifically a Bergara model B14 HMR .300 Winchester Magnum rifle bearing serial number 61-06-235015-21. The defendant relinquishes and abandons all claims, title, and interest the defendant has in such property with the understanding and consent that the Bureau of Alcohol, Tobacco, Firearms and Explosives may dispose of the property without further obligation.

(3)   waive certain appellate and collateral attack rights, as explained in detail below.

### B.   The government's obligations:

This agreement is made pursuant to Fed. R. Crim. P. 11(c)(1)(C) and the parties agree that not more than 96 months' imprisonment and three years' supervised release is the appropriate disposition in this case.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

The parties understand that, once the Court accepts the plea agreement, the Court is required to enter a sentence that does not exceed 96 months' imprisonment. The parties further understand that, if the Court informs the parties that it intends to impose a sentence different from the above-described sentence, either party has the right to

withdraw from the plea agreement.

### C. The defendant's waiver of appeal:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1) the sentence exceeds the maximum sentence provided in the statutes of conviction, 18 U.S.C. § 371 and 26 U.S.C. § 5861(d);

(2) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 29; or

(3) the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

3

(2) the defendant was deprived of the effective assistance of counsel; or

(3) the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the Court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the Court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offenses to which the defendant will plead guilty are as follows:

### Count One: 18 U.S.C. § 371

*First*: there was an agreement to violate the law;

*Second*: the defendant knew the essential objective of the conspiracy;

*Third*: the defendant knowingly and voluntarily participated in the conspiracy;

*Fourth*: an overt act was committed in furtherance of the conspiracy;

*Fifth:* the co-conspirators were interdependent.

See *United States v. Cooper*, 654 F.3d 1104, 1115 (10th Cir. 2011).

### Count Two: 26 U.S.C. § 5861(d)

*First*: That the defendant knowingly possessed a National Firearms Act firearm;

*Second*: That the firearm was a silencer;

*Third*: That the defendant knew the characteristics of the firearm that is, a silencer;

*Fourth:* That the firearm was or could readily have been put in operating condition.

*Fifth*: That such firearm was not registered to the defendant in the National Firearms Registration and Transfer Record. It does not matter whether the defendant knew that the firearm was not registered or had to be registered.

### III.  STATUTORY MAXIMUM SENTENCE

The maximum sentence for Count One of the Information, under 18 U.S.C. § 371, is not more than five years' imprisonment, not more than a $250,000 fine, or both; not more than three years' supervised release; and a $100 special assessment fee.

The maximum sentence for Count Two of the Information, under 26 U.S.C. § 5861(d), is not more than 10 years' imprisonment, not more than a $10,000 fine, or both, not more than three year' supervised release, and a $100 special assessment fee.

### IV.  COLLATERAL CONSEQUENCES

This felony conviction may cause the loss of civil rights including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury. If the defendant is an alien, the conviction may cause the defendant to be deported and

5

removed from the United States or confined indefinitely if there is no country to which the defendant may be deported, denied future admission into the United States, and/or to be denied citizenship.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

The defendant, Campbell Phillip Slayden, and Co-Conspirator 1 ("CC-1"), were owners of Modern Arms & Optics, LLC ("MAO") since November of 2019. From early in 2020, MAO held a Type 01 federal firearms license ("FFL") that allowed it to engage in the business of dealing in firearms. In their role as owners of and operators of MAO, the defendant and CC-1 both applied for and acquired MAO's FFL and were listed as the sole "responsible persons" on that license. This designation allowed them to direct or cause

6

the direction of the management, policies, and practices of MAO as it pertained to firearms.

MAO engaged in business at a residence on Raleigh St., Denver, Colorado, and also at numerous gun shows in the State and District of Colorado, the latter being the venue for the majority of their business transactions. The defendant and CC-1 were involved in all aspects of the business operations of MAO. Through their operation of MAO, the defendant and CC-1 profited from sales of firearms and ammunition and by collecting fees for conducting background checks for their sales and for checks done for third-party transfers.

### *Straw Purchasing*

The defendant and CC-1 conducted background checks and completed Form 4473s for firearms MAO sold out of its inventory and also for transfers between private parties or transfers to customers from other licensed dealers. Through their operation of MAO, the defendant and CC-1 profited from sales of firearms and ammunition and by collecting fees for conducting background checks for their sales and for background checks done for third-party transfers.

The defendant and CC-1 engaged in deceptive acts to hide information, mislead, avoid suspicion, and avert further inquiry into their business by knowingly transferring and selling firearms to prohibited persons through the use of straw purchasers. A straw purchase occurs when the transferee or buyer who actually undergoes the background check and completes the Form 4473 is not the true transferee or buyer. In this manner, persons prohibited from possessing firearms or wishing to hide their acquisitions of firearms could obtain firearms without undergoing background checks. Rather, the "straw

purchaser" would acquire the firearm on behalf of the final transferee or buyer. To this end, the defendant and CC-1 would knowingly transfer and sell firearms to individuals, acting as agents of the prohibited purchasers, who falsely claimed to be the true transferee or buyer in a manner designed to disguise the identity of the true purchaser.

The defendant and CC-1 also participated in a separate process that would knowingly facilitate straw purchases by deliberate ignorance. In this separate process, The defendant and CC-1 impeded, impaired, obstructed, and defeated the ATF's lawful functions by deliberately taking action to avoid learning about straw purchases despite being aware or having reasonable cause to believe there existed a high probability that the true purchasers were prohibited from possessing them. The defendant and CC-1 would send out electronic links that allowed Form 4473s to be filled out privately and out-of-view by anyone with access to the link. This allowed the straw purchasers, or in some cases the prohibited firearm buyers themselves, to easily supply false and fraudulent misrepresentations outside the in-person presence of the defendant and CC-1 regarding the true purchasers of the firearm, to wit, information related to a straw purchaser. When suspicious of an in-person straw purchase, the defendant and CC-1 would intentionally fail to conduct reasonable inquiries into the true purchaser by simply completing the background check and transferring the firearm to the transferee or buyer whom they knew or had reasonable cause to believe was not the actual buyer.

The defendant and CC-1 further impeded, impaired, obstructed, and defeated the ATF's lawful functions by retaining Form 4473 records that falsely represented the identities of the true transferees or buyers from the ATF. The defendant and CC-1 conducted background checks, completed and maintained required Form 4473s, and

8

transferred firearms through numerous false buyers including, among others, persons with the initials J.C., D.L., G.G., A.P., S.O., J.I., J.M., A.H., A.C., and M.R. In doing so, they acted knowingly or with deliberate blindness to an awareness of the high probability that those parties were not the true transferees or buyers. Many individuals prohibited by federal or state law from possessing firearms ultimately received firearms that were straw purchased or obtained using false information through MAO, including persons with the initials S.R., A.R., C.C., C.N., L.C., and D.S.

*Manufacturing*

The defendant and CC-1 engaged in deceptive acts and contrivances to hide information, mislead, avoid suspicion, and avert further inquiry into their business of manufacturing firearms without a Type 07 federal firearms license for sale to customers. Specifically, the defendant and CC-1 knowingly and willfully created and maintained a false A&D record that concealed their manufacturing activities from the ATF.

The defendant and CC-1, knowingly and willfully recorded in the A&D record lower receivers acquired from Chattanooga Shooting Supplies ("CSS"), a main supplier of Polymer 80 parts, as disposed as "pistols":

| Serial number | Date sent from CSS to MAO | Date received in MAO's A&D | Date sold in MAO's A&D | Description by CSS | Description in A&D |
|---|---|---|---|---|---|
| SA46609 | 9/17/2021 | 12/1/2021 | 5/14/2022 | Lower receiver | Multi Cal Pistol |
| SA46687 | 9/17/2021 | 12/1/2021 | 4/24/2022 | Lower receiver | Multi Cal Pistol |
| SA54163 | 2/1/2022 | 2/6/2022 | 3/25/2022 | Lower receiver | 9mm Pistol |
| SA49337 | 2/1/2022 | 2/6/2022 | 3/12/2022 | Lower receiver | 9mm Pistol |
| CA43885 | 5/13/2022 | 5/19/2022 | 5/22/2022 | Lower receiver | 9mm Pistol |

9

| | | | | | |
|---|---|---|---|---|---|
| CA54168 | 5/13/2022 | 5/19/2022 | 5/27/2022 | Lower receiver | 9mm Pistol |
| CA54142 | 5/13/2022 | 5/19/2022 | 7/17/2022 | Lower receiver | 9mm Pistol |
| CA54107 | 5/13/2022 | 5/19/2022 | 7/17/2022 | Lower receiver | 9mm Pistol |
| CA38720 | 5/23/2022 | 5/26/2022 | 7/24/2022 | Lower receiver | 9mm Pistol |

On October 29, 2021, the defendant and CC-1 recorded the acquisition of an AM-15 lower receiver from Anderson Manufacturing bearing serial number 21311504 in MAO's A&D record. Later, on January 23, 2023, the defendant or his co-conspirator fraudulently changed that record to show that the firearm was a completed "pistol" received by CSS.

On June 30, 2022, MAO sold one completed AR-style firearm that was manufactured by the defendant and CC-1 from a receiver previously acquired by MAO to a person whose initials are K.R. The disposition and transfer of this manufactured firearm was recorded as a receiver only in MAO's A&D record.

On September 23, 2022, MAO sold three complete AR-style firearms that were manufactured from receivers previously acquired by MAO to a person whose initials are A.R. The disposition and transfer of these manufactured firearms to A.R. were recorded as receivers only in MAO's A&D record.

In their manufacturing business, the defendant and CC-1 acquired and possessed at least one "Wide-Open Trigger" for installation on manufactured firearms. On March 22, 2022, forced reset triggers, which includes Wide-Open Triggers, were classified by ATF as machine guns requiring registration on the National Firearms Register and Transfer Record per the National Firearms Act. During an official ATF inspection at MAO at the residence on Raleigh St., Denver, Colorado, on September 13, 2022, inspectors

recovered an unregistered Wide-Open Trigger but did not immediately seize it, instead leaving it at the location in plain view as the multi-day inspection continued. Thereafter, the defendant and CC-1 hid the wide-open trigger to evade ATF's seizure and potential action on the illicit item. Later in the inspection, September 15, 2022, ATF agents and inspectors were forced to search for the trigger and found it in the hidden location. That Wide-Open Trigger was in fact determined to be a machine gun under 18 U.S.C. § 5845(b) through technical examination by ATF's Firearms & Ammunition Technology Division and was not registered as required by the National Firearms Act.[1]

During all relevant times, the defendant and CC-1 were aware of the ATF's administrative investigations into MAO's unlawful manufacturing and participation in straw-purchases of firearms, and knowing they faced possible administrative revocation of MAO's federal firearms license, the defendant and CC-1 incorporated in the state of Colorado a new firearms store, Firearms Supply Store LLC ("FSS"), on July 19, 2022, and further attempted to transfer and hide MAO's business in this false storefront.

Co-Conspirator 2 ("CC-2") applied for a Type 01 FFL for FSS in his name and at the defendant's direction and with knowledge of CC-1. This FFL application, which omitted the defendant's and CC-1's participation in the business, was submitted as part of an effort to hide information, avoid, mislead, avoid suspicion, and avert further inquiry into the nature of the defendant's and CC-1's business by the ATF. As a part of the application, ATF required documentation of the operating location of FSS. In response, the defendant forged a commercial real property lease for the location at which FSS would

---

1   The defendant disputes whether Wide-Open Triggers meet federal machine gun definitions legally notwithstanding ATF's finding that they do.

11

operate, 9166 W. 44th Ave, Wheatridge, Colorado, and directed CC-2 in his name to submit that as a part of his FFL. The defendant thereby caused fraudulent information to be transmitted to the ATF on July 19, 2022, in order to perpetuate his and CC-1's business in and corollary profit obtained in manufacture and straw purchases of firearms.

*Unregistered silencer*

On September 10, 2023, the defendant knowingly possessed an unserialized silencer that was not registered to him in the National Firearms Registration and Transfer Record. That silencer was recovered by a wildlife officer employed by Colorado Parks and Wildlife, to whom the defendant admitted knowledge that the "can" needed a "tax stamp" to be legal. The ATF's Firearms & Ammunition Technology Division has since examined the silencer and determined that it is a device for silencing, muffling, or diminishing the report of a portable firearm.

## VI. ADVISORY GUIDELINE COMPUTATION AND 18 U.S.C. § 3553 ADVISEMENT

The parties understand that the United States Sentencing Guidelines are only advisory but represent the starting point and benchmark for sentencing. The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. To aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines (USSG). To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The guideline calculation below is the good faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may make legal or factual arguments that affect the estimate below.

A. Under USSG § 2K2.1(a)(5), the base offense level is **18** because the offense involved a firearm described in 26 U.S.C. § 5845(a).

B. Specific offense characteristics:

   i. There is a **six-level increase** because the offense involved 25-99 firearms under USSG § 2K2.1(b)(1)(C);[2]

   ii. There is a **four-level increase** because the defendant engaged in the trafficking of firearms under USSG § 2K2.1(b)(5);

   iii. There is a **four-level increase** because the defendant possessed any firearm or ammunition in connection with another felony offense under USSG § 2K2.1(b)(6)(B).

C. There are no victim-related, role-in-offense, obstruction, and/or multiple count adjustments.

D. The adjusted offense level therefore would be **32.**

E. The defendant should receive a three-level adjustment for acceptance of responsibility under § 3E1.1. The resulting, total offense level therefore would be **29**.

F. The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's Criminal History

---

2   The defendant disputes the government's calculation of the number of firearms under USSG § 2K2.1(b)(1)(C) and believes that the number should be 8-24 firearms under § 2K2.1(b)(1)(B), leading to a four-level increase only. Because of his dispute, the defendant calculates the advisory guideline range as 70-87 months' imprisonment.

13

Category would be I.

G. Assuming the criminal history facts known to the parties are correct, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

H. <u>Imprisonment</u>: The advisory guideline range of imprisonment resulting from an offense level of **29** and the above criminal history category is **87-108 months' imprisonment**. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 87 months' (bottom of Category I) to 188 months' (top of Category VI).

I. <u>Fine</u>: Pursuant to guideline § 5E1.2, assuming an estimated offense level of **29**, the fine range for this offense would be $30,000 to $300,000, plus applicable interest and penalties.

J. <u>Supervised Release</u>: The guideline range of supervised release under § 5D1.2 is at least one year but not more than three years.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

As noted above in Section I.B. the parties have agreed pursuant to Fed.R.Crim.P.11(c)(1)(C) that a prison sentence of not more than 96 months' imprisonment and three years' supervised release is the appropriate sentence in this case, and the parties will be jointly asking the Court to impose that sentence.

## VII. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 7-23-24

_____
Campbell Phillip Slayden
Defendant

Date: 7-23-24

_____
Peter Hedeen
Attorney for Defendant

Date: 6/5/2024

_____
Albert Buchman
Assistant United States Attorney